```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**PENNY LEWIS, on behalf of**
**Herself and all other**
**Similarly situated,**

      **Plaintiff,**

v.                                                **CIVIL ACTION NO. 2:22-CV-12**
                                                                          **(KLEEH)**

**PENDLETON COMMUNITY BANK,**

      **Defendants.**

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S**
**MOTION TO DISMISS [ECF NO. 12]**

Pending before the Court is *Defendant Pendleton Community Bank, Inc.'s Motion to Dismiss* [ECF No. 12]. For the reasons discussed herein, Pendleton Community Bank, Inc.'s motion to dismiss is **DENIED**.

**I.   BACKGROUND**

Plaintiff Penny Lewis ("Plaintiff" or "Ms. Lewis") maintained a checking account with Pendleton Community Bank ("Defendant" or "PCB"). Compl. at ¶ 5, ECF No. 1. Plaintiff's use of her checking account was governed by a standardized form contract for deposit accounts ("Contract"). Id. at ¶¶ 15-16.[1] The Contract was drafted by PCB and governs the use of all deposit accounts. Id. at ¶ 16.

---

[1] Plaintiff attached the documents she contends make up the Contract with PCB to her Complaint as Exhibit A. In resolving a motion to dismiss for failure to state a claim, the court may consider documents that are "explicitly

Ms. Lewis alleges the Defendant breached the Contract in two ways: (1) charging overdraft fees on "Authorize Positive, Settle Negative Transactions" ("ASPN Transactions")[2] [Id. at ¶ 17] and (2) charging multiple insufficient funds fees ("NSF"), or an NSF fee followed by an overdraft fee, on the same item [Id. at ¶ 70]. The Contract does not define "item" in a way to permit multiple fees. See Id. at ¶¶ 80-87. Furthermore, Plaintiff contends that the fees were intentionally charged as part of PCB's standard practices, even though they were not permitted by the Contract. Id. at ¶ 105.

Regarding Plaintiff's first claim, the Contract provides that "[i]f a check, item or transaction (other than an ATM or everyday debit card transaction) is presented without sufficient funds in your account to pay it, we may, at our discretion, pay the item (creating an overdraft) or return the item for insufficient funds (NSF)." Id. at ¶ 35; Ex. A at 25. According to Plaintiff, this language means that transactions are only "overdraft transactions when there is not enough money to cover the transaction at the time the customer swipes his or her debit card to pay for an item." Id. at ¶ 38. However, Plaintiff contends that PCB breaches this

---

incorporated into the complaint by reference and those attached to the complaint as exhibits" without converting it to a motion for summary judgment. Goldfarb v. Mayor & City Council of Baltimore, 791 F.3d 500, 508 (4th Cir. 2015).

[2] ASPN Transactions occur when, "[d]espite putting aside sufficient available funds for debit card transactions at the time those transactions are authorized, Defendant later assesses OD Fees on those same transactions when they settle days later into a negative balance." Compl. at ¶ 20.

promise by charging overdraft fees on debit card transactions when there were sufficient funds set aside at the time of authorization to cover the transaction. Id. at ¶¶ 39-41. The Contract does not permit PCB to charge overdraft fees on ASPN Transactions, and as a result, PCB's practices caused Plaintiff to incur more fees than permitted under the Contract. Id. at 40-42. Specifically, Plaintiff alleges she was assessed $35 overdraft fees on or around January 19, 2018, October 12, 2018, March 19, 2020, June 10, 2021, July 26, 2021, and February 22, 2022, on debit card transactions which had been previously authorized on sufficient funds. Id. at ¶ 68.

Second, Plaintiff claims that PCB assesses two or more fees on the same item returned for insufficient funds, which is a "deceptive and contractually-prohibited practice." Id. at ¶ 70. Plaintiff contends that the Contract allows PCB to pay the item and charge a $35 fee *or* reject the item and charge a $35 fee. Id. at ¶ 78. Instead, PCB is alleged to breach the Contract's promise of one $35 fee per item by assessing multiple fees per item, up to $105. Id. at ¶¶ 80-82. For example, Plaintiff claims that on August 20, 2018, Plaintiff attempted a single payment, which was rejected for insufficient funds and thus she was charged a $35 fee. Id. at ¶¶ 95-96. However, without Plaintiff's permission, Defendant reprocessed the same item on August 24, 2018; this time paying the item into overdraft and charging Plaintiff a second $35 fee. Id.

3

at ¶ 97. Thus, PCB charged Plaintiff $70 in fees on the same item. Id. at ¶ 98. Similar multiple charges were also assessed on February 7, 2019, February 12, 2019, February 13, 2019, and February 15, 2019. Id. at ¶ 102. Plaintiff understood the fees related to the same items because the re-presentment of the original item was labeled as "RETRY PYMT" on the bank statements. Id. at ¶ 104.

In contrast, PCB contends that the contractual documents "explicitly state that such fees are charged based upon the account balance at the time that checks and other items are presented for payment and that an item may be presented multiple times, resulting in multiple fees for the same item." ECF No. 32, Motion to Dismiss at 1. Defendant specifically relies upon its "Bounce Protection" disclosure brochure to support that its practices are permitted and that the Contract is clear and unambiguous. See ECF No. 32-1, Memorandum in Support of Motion to Dismiss. The Bounce Protection Brochure went into effect in December 2019. ECF No. 17, Plaintiff's Response in Opposition. PCB also contends that the Plaintiff's claims are untimely because she did not inform PCB of any errors on her account within 60 days of receiving a statement, as required under the Contract.³ ECF No. 13, at pp. 18-19.

---

³ **"Your Duty to Report Other Errors or Problems.** In addition to your duty to review your statements for unauthorized signatures, alterations and forgeries, you agree to examine your statement with reasonable promptness for any other error or problem - such as an encoding error or an unexpected deposit amount. . . .Failure to examine your statement and items and report any errors to us

4

## II. <u>PROCEDURAL HISTORY</u>

On August 5, 2022, Plaintiff Penny Lewis, on behalf of herself and all persons similarly situated filed a class action complaint alleging two counts of Breach of Contract and one count for Unjust Enrichment relating to PCB's overdraft fee practices. On October 10, 2022, PCB moved to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 12. On December 2, 2022, PCB filed its response in opposition to Plaintiff's motion. ECF No. 17. Subsequently, PCB replied in support of its motion to dismiss. ECF No. 19. The motion to dismiss is thus fully briefed and ripe for review.

## III. <u>STANDARD OF REVIEW</u>

Rule 12(b)(6) allows a defendant to move for dismissal upon the ground that a complaint does not "state a claim upon which relief can be granted." In ruling on a 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint." <u>Anderson v. Sara Lee Corp.</u>, 508 F.3d 181, 188 (4th Cir. 2007) (quoting <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

---

within 60 days of when we first send or make the statement available precludes you from asserting a claim against us for any errors on items identified in that statement and as between you and us the loss will be entirely yours." ECF No. 1-2, at p. 16.

5

A court should dismiss a complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. MA.R.T.in, 980 F.2d 942, 952 (4th Cir. 1992). Dismissal is appropriate only if "it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim." Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969).

### IV.  APPLICABLE LAW

In West Virginia, the elements of breach of contract are (1) a contract exists between the parties; (2) a defendant failed to comply with a term in the contract, and (3) damage arose from the breach. Patrick v. PHH Mortgage Corp., 937 F.Supp.2d 773, 792 (N.D.W. Va. 2013).

> A contract of adhesion is one drafted and imposed by a party of superior strength that leaves the subscribing party little or no opportunity to alter the substantive terms, and only the opportunity to adhere to the contract or reject it. A contract of adhesion should receive greater scrutiny than a

6

> contract with bargained-for terms to determine if it imposes terms that are . . . beyond the reasonable expectations of an ordinary person.

State ex rel. Ocwen Loan Servicing, LLC v. Webster, 232 W. Va. 341, 357, 752 S.E.2d 372, 388 (2013) (internal citations omitted).

"A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Wickland v. Am. Mountaineer Energy, Inc., No. 1:17-CV-205, 2019 WL 1590590, at *6 (N.D.W. Va. Apr. 12, 2019) (quoting Syl. Pt. 2, Toppings v. Rainbow Homes, Inc., 490 S.E.2d 817 (W. Va. 1997)). "Uncertainties in an intricate and involved contract should be resolved against the party who prepared it." Id. (quoting Syl. Pt. 8, Estate of Tawney v. Columbia Nat. Res., LLC, 633 S.E.2d 22 (W. Va. 2006)).

"The mere fact that parties do not agree to the construction of a contract does not render it ambiguous." Id. (quoting syl. Pt. 2, CONSOL Energy, Inc. v. Hummel, 792 S.E.2d 613 (W. Va. 2016)). Where contractual language is ambiguous, however, it must be construed before it can be applied. Haynes v. Daimler Chrysler Corp., 720 S.E.2d 564, 569 (W. Va. 2011). "A writing is considered ambiguous if a contract's terms are inconsistent on their face or the agreement is reasonably susceptible to more than one meaning." Baker v. Baker, 793 F. App'x 181, 187 (4th Cir. 2019). See also, Paterno v. Wells Fargo Ins. Servs., Inc., No. 2:12-CV-04692, 2013

7

WL 1187932, at *4 (S.D.W. Va. Mar. 21, 2013)("Contract language usually is considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of words employed and obligations undertaken.")(quoting State ex rel. Frazier & Oxley, L.C. v. Cummings, 569 S.E.2d 796, 803-04 (W.Va. 2002)).

"Whether a contract is ambiguous is a question of law determined by the court." Kaess v. Jay-Bee Oil & Gas, Inc., No. 1:22-CV-51, 2023 WL 4687206, at *4 (N.D.W. Va. July 21, 2023) (citing Syl. Pt. 1, Berkeley County Pub. Serv. Dist. v. Vitro Corp. of Am., 162 S.E.2d 189 (W. Va. 1968)). However, a contract's ambiguity is not to be resolved by the Court at the motion to dismiss stage. Tinsley v. OneWest Bank, FSB, 4 F. Supp. 3d 805, 832 (S.D.W. Va. 2014) (noting that a court should resolve any contractual ambiguities in favor of the plaintiff at the motion to dismiss stage). Rather, "the construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim." Martin Marietta Corp. v. Int'l Telecommunications Satellite Org., 991 F.2d 94, 97 (4th Cir. 1992). See Wickland for & on Behalf of an Irrevocable Tr. Established Dec. 23, 1974 v. Am. Mountaineer Energy, Inc., No. 1:17CV205, 2018 WL 3029273, at *7 (N.D.W. Va. June 18, 2018); Paterno v. Wells Fargo Ins. Servs., Inc., No. 2:12-CV-04692, 2013

8

WL 1187932, at *4 (S.D.W. Va. Mar. 21, 2013) ("The factual inquiry required to reconcile inconsistent or contradictory contract provisions precludes disposition at the motion to dismiss stage"); Fludd v. S. State Bank, 566 F. Supp. 3d 471, 487 (D.S.C. 2021)("While it is a question of law for the court to determine whether a contract's language is susceptible to more than one meaning, where a contract's material terms are ambiguous, their meaning becomes a question of fact unsuitable for a motion to dismiss.").

If both parties each present a reading of the contract which a "reasonably prudent person" might reach, the contract cannot be said to be free from ambiguity and a factual dispute exists. S & S Engineers, Inc. v. JustTech, LLC, No. 2:22-CV-00241, 2022 WL 15316626, at *3 (S.D.W. Va. Oct. 26, 2022) (finding the agreement ambiguous and denying the defendant's motion to dismiss because both parties alleged a reasonable reading of the agreement).

Multiple courts have declined to dismiss cases raising the same or similar allegations as those in Plaintiff's Complaint because the subject contractual terms were deemed ambiguous. See e.g, Mawyer v. Atl. Union Bank, No. 3:21CV726 (DJN), 2022 WL 1049311, at *4 (E.D. Va. Apr. 7, 2022) (finding the meaning of "item" within the contract to be ambiguous and declining to dismiss the plaintiff's breach of contract claim); Hunt v. Fairmont Fed. Credit Union, No. 21-C-98, Docket No. 47 (Monongalia Cnty., W. Va.

9

Nov. 4, 2021)(finding the adhesion contract left "many unanswered questions" about whether the bank was "permitted to assess OD fees on APSN transactions or multiple fees on an item."); Grice v. Indep. Bank, No. 7:20-CV-01948-JD, 2021 WL 5827238, at *6 (D.S.C. Mar. 26, 2021)(concluding the account documents were unclear and that plaintiff offered a reasonable interpretation of the account documents, which plausibly supported her breach of contract claims); Fludd, 566 F. Supp. 3d at 488 ("Because the parties' respective interpretations of the controlling contractual term are both reasonable, . . . breach of contract claim reveals a material ambiguity . . . that is directly tied to the challenged imposition of overdraft fees. The resulting question of fact as to the ultimate meaning of 'item' must be resolved by the fact finder after discovery . . ."); Moose v. Allegacy Fed. Credit Union, No. 20 CVS 4279, 2021 WL 1790713, at *3 (N.C. Super. May 5, 2021) (finding contract ambiguous and denying motion to dismiss because the terms "presented" and "presentation" were not defined and were unclear).

## V.  DISCUSSION

The Contract is susceptible to more than one meaning and thus dismissal is inappropriate at the 12(b)(6) stage because the Contract is ambiguous.

10

First and importantly, there is a reasonable dispute as to whether the Bounce Protection Brochure applies to the subject transactions. PCB contends the Bounce Protection Brochure is part of the parties' contract and explains "(a) fees are based upon the current account balance when an item is presented for payment: and (b) an item presented multiple times may result in multiple fees." ECF No. 13, at p. 5. For example, regarding ASPN transactions, the brochure provides "Your balance at the time these transactions post will determine the overdraft status and the assessment of fees. Other transactions initiated by you, or a delay in processing authorized transactions by the merchant, may result in previously authorized transactions posted against an insufficient balance." ECF No. 13-1. And, regarding the assessment of multiple fees, the brochure states that "Returned items may be presented for payment by the payee or their financial institution multiple times, which may result in multiple Overdraft/NSF Returned Fees." <u>Id.</u>

While these provisions could support PCB's fee practices, Plaintiff plausibly pleads that the Bounce Protection Brochure was not in effect during many of the subject transactions. ECF No. 17, at p. 18. The bottom of the Bounce Protection Brochure includes "12/19", which could reasonably appear to be an effective date of December 2019. <u>Id.</u>; ECF No. 13-1. Many of the alleged overdraft fees were assessed in 2018 and all the alleged multiple fee claims occurred in February 2019. Thus, taking these well-pleaded facts

11

as true, PCB could be liable to Plaintiff if the Bounce Back Brochure was not part of the parties' contractual agreement.

Secondly, there are additional ambiguities within the Contract, which preclude dismissal. First, regarding Plaintiff's ASPN breach of contract theory, it is unclear whether overdraft fees are to be assessed at authorization or settlement. While the Bounce Protection Brochure states that fees are assessed at the time of posting, Plaintiff points to multiple provisions elsewhere which indicate that the imposition of overdraft fees occurs when PCB authorizes or approves a debit charge. See Lussoro v. Ocean Fin. Fed. Credit Union, 456 F. Supp. 3d 474, 483 (E.D.N.Y. 2020) (finding similar contract language permitted bank to only impose overdraft fees at the time of authorization). Second, the terms "presented" and "item" are undefined within the Contract and both parties provide reasonable interpretations of the terms, which cannot be resolved at this stage.[4]

Third, assuming the Bounce Protection Brochure does not apply, the contract language does not otherwise unambiguously permit the imposition of multiple fees on the same item. Plaintiff contends an "item" is a "transfer initiated by the consumer", which remains one transaction even if re-submitted by a merchant. ECF

---

[4] PCB contends that presentment occurs when a merchant presents "the amount due to the bank for actual payment and posting to the customer's account." ECF No. 13, at p. 6. In contrast, Plaintiff contends that the Contract uses "the term 'presented' in the context of PCB's decision to pay or return an item," which only occurs at authorization. ECF No. 17, at p. 13.

12

No. 17, at p. 17. Even assuming the Bounce Protection Brochure is applicable, other portions of the contractual documents allow for a "Fee Per Item." ECF No. 1-2, at p. 29. Thus, the Contract is ambiguous and subject to multiple reasonable interpretations.

Furthermore, the Court is not persuaded by Defendant's timeliness argument. The 60-day duty to report refers to an "error or problem - such as an encoding error or an unexpected deposit amount." ECF No. 1-2, at p. 16. Defendant's imposition of fees is not charged in error. Rather, Plaintiff's Complaint challenges the permissibility of such intentional fees under the terms of the Contract. At minimum, the 60-day deadline does not so explicitly include Plaintiff's claims to permit dismissal.

Accordingly, resolving any contractual ambiguities in Plaintiff's favor at the 12(b)(6) stage, Plaintiff has sufficiently stated her claims.

## VI. CONCLUSION

For the reasons stated herein, *Defendant Pendleton Community Bank, Inc.'s Motion to Dismiss* [ECF No. 12] is **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record.

**DATED**: March 1, 2024

*/s/ Tom S Kleeh*

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA